TUCKER, Judge.
The statement of the facts of this case and the history of its litigation, as excellently set forth by counsel for appellant in his appellate brief, will be adopted by this court as reproduced below:
“This case originally came before the Civil Service Commission on an appeal to that body arising from appellant’s dismissal by the Department of Highways. Appellant had been dismissed from such employment by a letter from the defendant dated November 2, 1970 to be effective November 6, 1970. By a letter dated November 20, 1970, appellant appealed the Department’s action to the Civil Service Commission and a hearing on the matter was set by the Commission on June 1, 1971. On May 25, 1971, prior to the day on which the matter was to be heard, defendant filed a Motion for Summary Disposition, which was taken up on the day of the hearing, although, among other things, appellant questioned the service of said Motion. The Commission, nevertheless, granted the motion on the grounds that appellant’s letter of appeal to the Commission did not fairly contest the basis for his dismissal as expressed in the Department’s letter of November 2. Accordingly, the Commission dismissed appellant’s appeal without hearing. The Commission’s opinion and order dismissing appellant’s appeal was filed July 12, 1971. On July 21, 1971 appellant applied for a rehearing before the Commission and was advised by the Department of Personnel that the Civil Service rules contained no authorization for rehearing and that same was not available to the appellant. Appellant then perfected a timely appeal to this Court, which appeal was docketed as No. 8714. In due course, the appeal was argued and fully submitted to this Court and on January 31, 1972, this Court rendered a unanimous judgment, opinion by Judge Ellis, reversing the decision of the Civil Service Commission and remanding the matter to the Commission ‘for hearing of the appeal in , accordance with law’.[1]
Following the return of the case to the Commission, the matter was again set down for hearing and ultimately was heard by the Commission in several adjourned sessions because the testimony adduced in the matter was too lengthy to be contained in a single session.
Prior to any of the hearings, however, appellant filed several motions and other documents, including a Motion to Produce and a Motion for Summary Disposition of the matter on behalf of appellant. In response to the Motion to Produce, defendants produced a number of voluminous files which appellant was allowed to examine for a few minutes before the hearing, and which appellant was also allowed to keep during the period in which the hearing was in progress. At the adjournment of the hearing the files were reclaimed by the defendant and again furnished to appellant at the time the hearing was next resumed.
Insofar as plaintiff’s Motion for Summary Disposition is concerned, the Chairman ‘overruled’ it (without considering its merits and in spite of the fact that counsel had already stipulated to the factual basis of same) giving as reason that this Court had ordered the Commission to hear this case on the merits and that is what they were going to do. Further evidence in regard to the issues raised in plaintiff’s Motion was adduced in the process of the hearings, but the *648 Commission never at any time considered the issues presented by the Motion, nor are they even mentioned in its opinion. By opinion and order filed December 7, 1972, the Commission again dismissed plaintiffs appeal. It is on appeal from this dismissal that the case is presently before this Court.
In support of its decision, the Commission made certain findings of fact set forth in nine numbered paragraphs, which can be summarized as follows. Appellant was employed by defendant Department from September 1964 until his termination, effective November 6, 1970. During this period, appellant had been on leave without pay beginning February 4, 1970, and had reported for work on October S, 1970, on which date he was required to submit to a physical examination by the Department’s physician. As a result of this examination, plaintiff was not allowed to return to work and he was subsequently advised of his termination, for medical reasons, by the letter dated November 2, 1970. These reasons consist principally of an increase of blood pressure and weight and also the appearance of a 1 plus albumen in his urine. The Commission also found that appellant’s duties required, at times, substantial physical exertion and agility. The Commission specifically did not find, either in its enumerated findings of fact or in its discussion on same that appellant was ever unable to perform these tasks. . . . ”
Appellant complained bitterly about the lack of discovery permitted him, but assigned only the following as the grounds for error by the Commission:
“A. The termination of plaintiff’s employment for alleged medical reasons was improper under the requirements of Rule 12.10 of the Commission.
B.The termination was also improper under the requirements of Rule 12.3 of the Commission.
C. The termination was improper because there is no real or substantial relationship between the alleged cause of termination and the qualifications for the job.
D. The termination was improper for lack of any factual basis to support the findings of the Commission.
E. The decision of the Commission is invalid because it is discriminatory.
F. The termination is invalid because plaintiff was not allowed to show the real cause of his dismissal.”
The letter of the Department of Highways, dated November 2, 1970, terminating appellant contained the following paragraph :
“The reason for this action is your poor health and inability to improve your condition sufficiently to pass the Department’s medical examination. After having been granted approximately eight months of leave without pay at your request to improve your health under close supervision in an institution, you advised on August 17, 1970 you were unable to enter the institution and wished to return to work. Upon reporting for work on October 5, 1970 you were unable to meet the requirements of the Department’s medical examination. You were furnished a copy of this examination and you are aware of the deficiencies the doctor found.”
As a matter of actual fact appellant was not furnished with a copy of the doctor’s report, nor was he informed of its content, despite specific requests for same at the time of the examination, and in his letter of appeal dated November 20, 1970. Appellant filed a Motion for Production of Documents and he and his attorney made many subsequent requests, both written and verbal, for a copy of the report of the examining physician, Dr. Ribando, or for knowledge of its contents; yet they were refused same and did not receive such until *649 after the hearing of the commission had begun June 30, 1972, twenty months after his termination. Without the copy of the examination report alluded to in the letter of termination the Department of Highways is derelict in not having given the appellant “detailed reasons for such action,” as required by Civil Service Commission Rule 12.3. We consider “the detailed reasons” for dismissal sacramental to a termination, without which a reversal of the dismissal should be in order, for the very obvious reason that the employee who does not know the basis of his dismissal has no way to refute charges against himself. In the case of charges of ill health, it is most difficult, or well neigh impossible, to refute them twenty months later. In the instant case the action of the Highway Department in withholding the appellant’s medical report of October 5, 1970, is doubly irresponsible when one notes appellant’s testimony to the effect that he was given the examination without previous notification, and that he would not have indulged in an evening of revelery prior to the morning of the examination had he known to expect it, because he knew that his eating and drinking were calculated to raise his blood pressure. Even so, had he been informed of the contents of the medical report timely, he could have asked for another examination on the next day when his blood pressure and other physical symptoms of ill health might have subsided. We note, also, that the so-called “nurse” who made the tests upon appellant was not a qualified nurse, and that Dr. Ribando himself admitted that his method of taking a patient’s blood pressure was not the most accurate method possible.
 We think that the action of the Civil Service Commission in upholding the dismissal of appellant by the Department of Highways should be reversed for violation of Civil Service Commission Rule 12.-3. We note, however, the merits of appellant’s allegations of error on other points. Appellant is correct in urging that under Civil Service Commission Rule 12.10 his termination was improper and invalid. This rule is as follows:
“Rule 12.10(a)
“An employee absent from duty because of illness or disabling injury who has exhausted all sick leave may be removed. . . . ”
Appellant’s discharge was in violation of several provisions of the rule quoted above (1) Appellant was not absent from work on the morning of October 5, 1970. He had in fact reported to work in compliance with the instructions of Mr. Alvin Bridges of the Department of Highways, whereupon he was told that he had to undergo a physical examination and would not be permitted to work until he had passed it. He was not ill or disabled, but had suffered from problems of ill health for which he had voluntarily sought treatment; namely, his obesity, high blood pressure, and hypertension. Plaintiff announced himself ready to go to work when he reported. He had a statement from his doctor, Dr. Webb, dated Sept. 14, 1970, giving it as his opinion that appellant was physically able to work. (3) Appellant had not exhausted his sick leave. It is a matter of stipulation between counsel that appellant had almost two days of accrued and unused sick leave at the time of his termination (thirteen hours, according to the Department of Highways). It was noted in Scallan v. Dept. of Institutions, 143 So.2d 160 (La.App. 1st Cir. 1962) that any interpretation and application of a Civil Service Commission Rule which results in arbitrary dismissal renders the dismissal null and void. Such interpretation and application is a question of law which should be decided by judicial review. Furthermore, it was emphasized in four segments of Bradford v. Dept. of Hospitals, 255 La. 888, 233 So. 2d 553 (1970) that the constitutionality of Rule 12.10(a) depends upon the fact that employee must be ill and/or disabled and must have exhausted all sick leave, before he or she can be discharged.
*650 “Of course there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service; otherwise legal cause is not present. . . . ” Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5, 9 (1962). In the instance of an employee discharged for medical reasons, we interpret the foregoing statement as requiring that there be some substantial relation between the medical or physical disability of the employee for which he was discharged and the requirements or qualifications of his job. Finding #5 of the Commission is as follows:
“5. The duties to which appellant was assigned as an Engineering Aide III required, at times, substantial physical exertion and agility, including the scaling of ladders to inspect the mixing of concrete and asphalt and the inspection of the contents of rail cars.”
Assuming that Dr. Ribando’s statement is true and properly admitted into evidence, it merely shows that appellant weighed 318 pounds, that his blood pressure was 200/110, that he had premature heart beats; and that he had 1 plus albumen in his urine. Certainly this finding does not necessarily negate appellant’s ability to perform the tasks required by his job. In fact this medical report showed a great improvement over his condition described in Commission Finding #4 in which it was stated that, at the time of his taking leave without pay, appellant weighed 3S5 pounds and that his blood pressure was 220/140. Commission finding #7 reveals that in the letter submitted by appellant at the time that he requested return to work he asserted that he weighed 31S and that his blood pressure was 150/90, which is probably more in line with what appellant might have registered if he had not been compelled to undergo the physical examination on the morning of October 5 and could have taken the examination a day or two later.
It is true that appellant’s job did require him to make inspections of concrete and rail cars “at times,” as the Commission found; but this was only rarely. The testimony reveals that ninety per cent of his duties consisted of paper work in his office, taking simple readings, making calculations, and supervising assistants. When he made his periodic concrete inspection he might have had to lift as heavy a sack as a thirty-pound one, but this was no strain for a man his size, who, according to testimony, was known to lift the rear-end of a Volkswagen automobile for the fun of it. If he could make the concrete inspections and jump from rail car to rail car, as he occasionally did, when weighing forty pounds more and with higher blood pressure, it seems difficult to find the adverse relationship between the state of health recited in the Commission’s findings and the job duties also set forth therein.
Dr. Ribando, the Highway Department physician, who examined appellant on October 5, 1970, had never been given any medical standards or guidelines to use in evaluating employees, nor any description of the tasks to be performed by them; so it is not too surprising to find him making the statement quoted in Commission Finding #9 from his written report of October 5, 1970, to the effect that appellant was not physically qualified for employment “in all classes.” On cross-examination Dr. Riban-do admitted that he did not have the faintest idea what an Engineering Aide III was expected to do, nor what appellant in particular was expected to do in the line of duty. Dr. Ribando did testify that Mr. Newbrough was able to do office work, which constituted the greater portion of his duties, according to numerous other witnesses, but absolutely refused to answer specific questions such as whether or not he could lift 35 or 40 pounds once or twice a day. The medical testimony is lacking, therefore, to substantiate the connection between the assigned cause for appellant’s termination, which was physical deficiencies, and the duties required of him to serve the Highway Department.
*651 Furthermore, we do not find sufficient factual basis to support the Commission’s findings in regard to appellant’s state of health at the time of termination. Upon cross-examination Dr. Ribando admitted that his method of taking blood pressure used by him for fifteen years was inaccurate. He was furnished examination copies and other aids to his memory; yet could summon no recollection of either the first time he examined appellant when he applied for work in 1964, nor the time he examined him in 1970. The Commission’s findings included parts of Dr. Ribando’s reports which he did not even read in court, which makes them completely unacceptable as findings. Dr. Ribando did testify, however, that all of appellant’s alleged deficiencies were correctable by medication. For all of the foregoing reasons we cannot hold that the Commission’s findings in regard to appellant’s ill health and inability to perform his duties for physical reasons are supported by the evidence.
Although we think that appellant had valid reason to charge discrimination against himself in the requirement of an “entrance examination,” so to speak, which other employees who had been ill were not required to take upon their return to work, and although we think that appellant should have been allowed to show the real reasons for his dismissal on the penalty of rendering his termination invalid, we do not think it necessary to go into these last two charges of error in the light of our findings on appellant’s first four charges of error by the Civil Service Commission. For all of the reasons set forth herein we declare the ruling of the Commission terminating appellant’s employment invalid.
For the reasons assigned the decision of the Civil Service Commission upholding the dismissal of the appellant from his employment by the State Department of Highways is reversed, and this court, therefore, orders that Joseph S. New-brough be reinstated by the State Department of Highways to his former position as an Engineering Aide III, retroactive to October 5, 1970, with reimbursement for all loss of wages and benefits since that date.
The State Department of Highways is cast with those costs of these proceedings for which it is libel under the law.
Reversed and rendered.

. Newbrough v. State, Dept. of Highways (La.App. 1st Cir. 1972) 257 So.2d 461.